Ted CHARLES, Appellant,

v.

INTERIOR REGIONAL HOUSING
AUTHORITY, Appellee.

No. S–10170.

Supreme Court of Alaska.

Sept. 20, 2002.

Michael J. Walleri, Law Offices of Michael J. Walleri, Fairbanks, for Appellant.

Tracey L. Knutson, Sisson & Knutson, P.C., Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Ted Charles sued his former employer, Interior Regional Housing Authority, alleging constructive discharge and breach of the implied covenant of good faith and fair dealing. The superior court granted summary judgment in favor of the housing authority, reasoning that, although Charles had presented sufficient evidence to create a genuine factual dispute concerning whether his resignation resulted from a sustained campaign of harassment directed at him by a coworker, there was no evidence to support imputing the coworker's conduct to the housing authority. But because the evidence submitted by Charles could lead a reasonable juror to conclude that the housing authority's executive director participated in the alleged campaign of harassment, or at least knew about the harassment and allowed it to continue, we reverse the summary judgment order.

## II. FACTS AND PROCEEDINGS

Interior Regional Housing Authority is a public corporation organized under AS 18.55.995 to provide housing assistance to low income Alaska Natives and their families in interior Alaska. Charles became the housing authority's tribal planning director in November 1998. As tribal planning director, Charles supervised tribal housing officers and tribal construction projects. At all times, Charles's employment with the housing authority was on an "at-will" basis.

Charles tendered his letter of resignation in August 1999. According to Charles, his

resignation resulted from an eight-month campaign of harassment directed at him by the housing authority. Charles claims that this campaign of harassment was instigated by his coworker Al Woods, the director of the housing authority's capital improvement projects, after Charles publicly corrected Woods on two separate occasions in January 1999.

In October Charles sued the housing authority for wrongful termination, alleging constructive discharge and breach of the implied covenant of good faith and fair dealing. The housing authority moved for summary judgment. After holding oral arguments, the superior court granted summary judgment in favor of the housing authority. The court found that although Charles had presented sufficient evidence to create a triable issue of fact concerning whether his resignation resulted from a sustained campaign of harassment directed against him by his coworker Woods, there was no evidence to support imputing Woods's conduct to the housing authority. Charles appeals.

## III. GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING WHETHER THE HOUSING AUTHORITY CONSTRUCTIVELY DISCHARGED CHARLES AND BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

■ To prevail on a wrongful termination claim an employee must prove: (1) that the employee was discharged by its employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination.[1] Charles attempted to satisfy these elements by alleging that he was constructively discharged by the housing authority and, in connection with his

constructive discharge, the housing authority breached the implied covenant of good faith and fair dealing.

In granting the housing authority's motion for summary judgment, the trial court found that the housing authority had established as a matter of law that it had not constructively discharged Charles, and therefore, that Charles's claim for wrongful termination failed because he could not establish the discharge element. Charles claims that this ruling was erroneous.

■ We review a trial court's grant of summary judgment de novo, applying our independent judgment,[2] and will affirm only if the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] We must draw all reasonable inferences in favor of the non-moving party.[4]

■ The moving party has the burden of proving the absence of issues of material fact.[5] "If the movant makes a prima facie showing that he or she is entitled to judgment on the established facts as a matter of law, the opposing party must demonstrate that a genuine issue of fact exists to be litigated by showing that it can produce admissible evidence reasonably tending to dispute the movant's evidence."[6] To determine whether the nonmoving party can produce admissible evidence creating a genuine factual dispute, we will "consider the affidavits, depositions, admissions, answers to interrogatories and similar material."[7]

### A. Charles Presented Sufficient Evidence of Constructive Discharge To Overcome Summary Judgment.

■ Constructive discharge "satisfies the discharge element in a wrongful dis-

1. *See, e.g., Starzynski v. Capital Pub. Radio, Inc.,* 88 Cal.App.4th 33, 105 Cal.Rptr.2d 525, 530 (2001) (" '[A]fter establishing ... discharge, an employee must independently prove a breach of contract or tort in connection with the employment termination in order to obtain damages for wrongful discharge.' ") (quoting *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022, 1030 (1994)); *Balmer v. Hawkeye Steel,* 604 N.W.2d 639, 642 (Iowa 2000) (quoting same).

2. *See, e.g., Christensen v. NCH Corp.,* 956 P.2d 468, 474 (Alaska 1998).

3. *See, e.g., id.*

4. *Lincoln v. Interior Reg'l Hous. Auth.,* 30 P.3d 582, 586 (Alaska 2001).

5. *Id.*

6. *French v. Jadon, Inc.,* 911 P.2d 20, 23 (Alaska 1996).

7. *See Broderick v. King's Way Assembly of God Church,* 808 P.2d 1211, 1215 (Alaska 1991).

charge claim."[8]   A constructive discharge occurs when "an employer makes working conditions so intolerable that the employee is forced into an involuntary resignation."[9]   To establish constructive discharge it is not necessary that the employee actually "prove that the employer acted with the specific intent of causing the employee to resign."[10]   Rather, the employee "has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign."[11]

Charles's constructive discharge claim alleged that his resignation was the direct result of "a campaign of harassment initiated by Al Woods."  Woods was the director of the housing authority's capital improvement projects and was responsible for overseeing various housing construction projects conducted by the housing authority.   Both Charles and Woods were supervised by Joe Wilson, the executive director of the housing authority.

In response to the housing authority's motion for summary judgment, Charles presented evidence of eight incidents to support his assertion that the housing authority had engaged in a sustained campaign of harassment against him: (1) on two occasions in January, after meetings during which Charles publicly corrected Woods, Woods told Charles that if he continued to correct Woods in public he would "make sure that things became difficult for [Charles]"; (2) following these threats, Woods began subjecting Charles to unwarranted criticism; (3) as part of a series of reorganizations in January, Charles's responsibility for tribal construction crews was reassigned to Woods at Woods's request; (4) beginning in March, Charles was excluded from morning management meetings between Woods and Wilson; (5) in July, the housing authority began canceling Charles's planned travel, giving the excuse that he was behind schedule on various projects, when "[i]n fact, planning activities at this time were on schedule"; (6) in August, several of Charles's relatives including his daughter, son-in-law, and three or four other relatives of his estranged wife were fired because of their relation to him; (7) Woods and Wilson falsely accused Charles of nepotism in arranging to have these relatives hired; (8) although on August 19 Charles gave Wilson verbal notice that he would be resigning in thirty days, six days later Wilson called him at home and directed him to clean out his desk by Friday, August 27.

Contrary to the housing authority's assertion, the record offers admissible evidence addressing each of these alleged incidents. Each incident finds support in one or more of the following sources: Charles's affidavit, Wilson's affidavit, Charles's deposition, Wilson's deposition, or the housing authority's answer to Charles's complaint.[12]

We have previously recognized that a constructive discharge may result from a "sustained campaign of harassment" against an employee.[13]   In *Cameron v. Beard,* a former employee for the state department of transportation alleged that he had been constructively discharged as a result of a sustained campaign of harassment by his supervisors.[14] At trial, the plaintiff presented evidence of a campaign to vote him out as union representative, unjustified negative job performance evaluations, statements by his supervisors that he would never be promoted, and a supervisor's warning that he should "do

---

**8.**  *City of Fairbanks v. Rice,* 20 P.3d 1097, 1102 n. 7 (Alaska 2000).

**9.**  *Cameron v. Beard,* 864 P.2d 538, 547 (Alaska 1993).

**10.**  *Id.*

**11.**  *Id.*

**12.**  *See French v. Jadon, Inc.,* 911 P.2d 20, 24 (Alaska 1996) ("'[T]he court will 'consider the affidavits, depositions, admissions, answers to interrogatories and similar material to determine

... whether any of the [evidentiary] material suggests the existence of any ... triable genuine issue of material fact.' ") (quoting *Broderick,* 808 P.2d at 1215).

**13.**  *See Ford v. Alfaro,* 785 F.2d 835, 841 (9th Cir.1986); *Finch v. Greatland Foods, Inc.,* 21 P.3d 1282, 1286 (Alaska 2001); *Cameron,* 864 P.2d at 547; *Sterling Drug Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380, 386 (1988); *Thompson v. Tracor Flight Sys., Inc.,* 86 Cal.App.4th 1156, 104 Cal.Rptr.2d 95, 104 (2001).

**14.**  864 P.2d at 540–41.

something quick" because he was about to be fired.[15] We upheld the jury's finding of constructive discharge, reasoning that there was "sufficient evidence in the record to support the jury verdict on this issue." [16]

Similarly, in *Finch v. Greatland Foods, Inc.* we addressed a former employee's appeal from the superior court's entry of summary judgment against him on his constructive discharge claim.[17] The plaintiff had specified four incidents supporting his assertion that his employer had engaged in a sustained campaign of harassment against him. These four incidents included (1) repeatedly criticizing the plaintiff for taking family leave, (2) reassigning the plaintiff's lucrative distribution route to a junior employee and forcing the plaintiff to take a less profitable route, (3) after switching the plaintiff's route, changing the pay system in a way that negatively affected only the plaintiff's income, and (4) after switching the plaintiff to commission pay, failing to support his customer service efforts.[18] We reversed the superior court's grant of summary judgment in favor of the employer, reasoning that

> "[a]lthough any one of these events alone would not support a claim for constructive discharge, when viewed in the totality and in the light most favorable to [the plaintiff], . . . they could lead a reasonable person in [the plaintiff's] position to conclude that [his employer] had pursued a sustained campaign of harassment that ultimately compelled him to resign." [19]

Here, the superior court found that Charles had presented sufficient evidence to raise a triable issue of fact as to whether there was a campaign of harassment directed at him by his coworker Woods; but, the

superior court granted the housing authority's motion for summary judgment because it found that there was no evidence to support holding the housing authority liable for Woods's conduct. The superior court reasoned that because Woods had no supervisory power over Charles, his actions could not be imputed to the housing authority absent some evidence that Woods was "doing the bidding of [the housing authority]."

■ But Charles did not need to prove that the housing authority, or its executive director, Wilson, directed the harassment against him. Rather, the question is whether the housing authority (or Wilson) either knew or should have known about the harassment and failed to take reasonable steps to prevent it. We have previously acknowledged that an employer's "lack of care" can "subject them to direct liability without the necessity of involving respondeat superior." [20] Other courts have also acknowledged this rule that "[a]n employer . . . as an entity may also be held directly liable for its own conduct if the employer knows or has reason to know that unlawful harassment is occurring or is likely to occur and fails to prevent or correct the behavior." [21] So Charles did not need to show that the housing authority (or Wilson) intended or directed Charles's harassment; he needed only to show that the housing authority (or Wilson) either knew or should have known about the harassment.

■ Viewing the evidence in the light most favorable to Charles, we find that the evidence could lead a reasonable juror to conclude that the housing authority's executive director, Joe Wilson, directly participat-

**15.** *Id.* at 548.

**16.** *Id.*

**17.** 21 P.3d at 1286.

**18.** *Id.*

**19.** *Id.*

**20.** *Fruit v. Schreiner,* 502 P.2d 133, 140 (Alaska 1972) ("Lack of care on the employer's part would subject [the employer] to direct liability without the necessity of involving respondeat superior.").

**21.** *Wille v. Hunkar Labs., Inc.,* 132 Ohio App.3d 92, 724 N.E.2d 492 (1998); *see also Erdmann v. Tranquility Inc.,* 155 F.Supp.2d 1152, 1163 (N.D.Cal.2001) ("[C]onstructive discharge occurs where the employer either *intentionally created or knowingly permitted* working conditions that are so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign.") (emphasis added).

ed in a campaign of harassment against Charles, or at least knew about it and allowed it to continue. The record indicates that it was Wilson who actually fired Charles's relatives and it was Wilson who called Charles at home and told him to clean out his desk by Friday, August 27—about three weeks before the effective date of Charles's announced resignation. Furthermore, the exclusion of Charles from morning management meetings between Woods and Wilson, the shifting of responsibility for tribal construction crews from Charles to Woods, and the cancellation of Charles's planned travel could not have occurred without Wilson's authorization.

Because this evidence, when viewed in the light most favorable to Charles, raises a triable issue of fact concerning whether Wilson directly participated in, or at least knew of and failed to prevent or correct, the campaign of harassment directed against Charles, we find that the superior court erred by holding as a matter of law that the housing authority did not constructively discharge Charles.

### B. Charles Presented Sufficient Evidence To Overcome Summary Judgment on His Claim for Breach of the Covenant of Good Faith and Fair Dealing.

The record also indicates that Charles presented sufficient evidence to raise a triable issue of material fact concerning whether the housing authority breached the covenant of good faith and fair dealing. The covenant of good faith and fair dealing is implied in all at-will employment contracts.[22] We have held that "[t]his covenant does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement" [23] and that the "employer treat like employees alike." [24]

An employer can commit either an objective or subjective breach of the covenant.[25] The employer commits a subjective breach " 'when it discharges an employee for the purpose of depriving him or her of one of the benefits of the contract.' " [26] The objective aspect of the covenant requires that the employer act in a manner that a reasonable person would regard as fair.[27] We have previously explained that examples of objective breaches of the covenant would include disparate employee treatment, terminations on grounds that were unconstitutional, and firings that violated public policy.[28]

Charles's claim focuses on the objective component of the covenant. Specifically, Charles contends that the housing authority "failed to treat similarly situated employees alike" with regards to the enforcement of its own nepotism policy.[29] The housing authority's nepotism policy provided in part:

No person shall be hired if a member of that person's "immediate family" is employed in a supervisory capacity or as the Department Head in the [housing authority] department being applied to. The

---

22. See, e.g., Holland v. Union Oil Co. of Cal., Inc., 993 P.2d 1026, 1032 (Alaska 1999); French v. Jadon, Inc., 911 P.2d 20, 24 (Alaska 1996); Revelle v. Marston, 898 P.2d 917, 926 (Alaska 1995).

23. Jones v. Cent. Peninsula Gen. Hosp., 779 P.2d 783, 789 (Alaska 1989).

24. Id. at 789 n. 6.

25. See, e.g., Revelle, 898 P.2d at 927 ("An employer may not only breach the covenant of good faith and fair dealing through improper motive or intent but may also commit an objective breach of the covenant, by failing to 'act in a manner which a reasonable person would regard as fair.' ") (quoting Luedtke v. Nabors Alaska Drilling, Inc. ("Luedtke II"), 834 P.2d 1220, 1224 (Alaska 1992)).

26. Finch v. Greatland Foods, Inc., 21 P.3d 1282, 1286–87 (Alaska 2001) (quoting Ramsey v. City of Sand Point, 936 P.2d 126, 133 (Alaska 1997)).

27. Id. at 1286–87; Holland, 993 P.2d at 1032; Ramsey, 936 P.2d at 133.

28. See Era Aviation, Inc. v. Seekins, 973 P.2d 1137, 1139 (Alaska 1999); Luedtke II, 834 P.2d at 1224.

29. On several occasions we have noted that an employer's failure to treat like employees alike may constitute a breach of the implied covenant of good faith and fair dealing. See Holland, 993 P.2d at 1033; Belluomini v. Fred Meyer of Alaska, Inc., 993 P.2d 1009, 1012–13 (Alaska 1999); Alaska Marine Pilots v. Hendsch, 950 P.2d 98, 109 (Alaska 1997).

term "immediate family" includes father, mother, husband, wife, sons, daughters, brothers, sisters, grandparents, grandchildren, mother-in-law, father-in-law, aunts or uncles. The term persons employed in a supervisory capacity or as a Department Head includes those persons who have overall administrative responsibility for a department[.]

Charles argues that his relatives were fired based on untrue allegations of nepotism while Woods was allowed to violate the company's nepotism policy with impunity.

Viewing the evidence in the light most favorable to Charles, we find that a reasonable juror could conclude that the housing authority applied a double standard in enforcing its nepotism policy. In its answer to Charles's complaint, the housing authority admits that "the employment of [Charles's] relatives did not violate [the housing authority's] Personnel Policy provision regarding nepotism since he was neither their supervisor nor the head of the department within which they were employed." Charles's allegation that Woods's son, brother, and stepson were improperly employed within Woods's department was also supported by the admissions of the housing authority. The housing authority admitted that these relatives were employed "under the direct supervision of Charles Huntington." The housing authority's organizational chart makes clear that Charles Huntington, and therefore Woods's relatives, were employed in Woods's department. This evidence, viewed in the light most favorable to Charles, could lead a reasonable jury to conclude that the housing authority had violated the covenant in its unequal enforcement of the nepotism policy.

Moreover, as we have previously discussed, Charles presented admissible evidence to support his broader claim that he was subjected to a sustained campaign of harassment at the housing authority. As we have explained, the covenant of good faith and fair dealing requires that employers "treat like employees alike." [30] Subjecting an employee to a pattern of harassing conduct could itself amount to disparate treatment in breach of the covenant of good faith and fair dealing.[31] We therefore conclude that Charles presented sufficient evidence to withstand summary judgment on his claim that the housing authority breached the implied covenant of good faith and fair dealing.[32]

## IV. CONCLUSION

Because a reasonable juror could conclude that the housing authority's executive director either participated in, or knew about, the alleged campaign of harassment against Charles, we conclude that Charles presented sufficient evidence to raise a genuine issue of material fact concerning whether he was constructively discharged by the housing authority. We also conclude that Charles presented sufficient evidence to create a triable issue of material fact concerning whether the housing authority breached the implied covenant of good faith and fair dealing. Therefore, we REVERSE the superior court's entry of summary judgment in favor of the housing authority and REMAND for further proceedings. Because the housing authority is no longer the prevailing party, the award of attorney's fees is VACATED.

MATTHEWS, Justice, not participating.

---

30. *Jones*, 779 P.2d at 789 n. 6.

31. *See Luedtke II*, 834 P.2d at 1224 (noting that failure to "treat like employees alike" and firings in violation of public policy both constitute objective violations of the covenant).

32. Charles also contends that the court erred by placing the burden on him, the nonmoving party, to make a "prima facie showing of breach of [the] covenant of good faith and fair dealing." Our decision makes it unnecessary to consider this argument.