**Del ERDMANN, Plaintiff,**

v.

**TRANQUILITY INC., et al., Defendants.**

**No. C–99–4880 JCS.**

United States District Court, N.D. California.

Jan. 24, 2001.

Gregg Lowell McCurdy, Henry Yong Ku, Gaetano Maxim Fong, Christopher Gary Jagard, McCurdy & Ku, Richmond, CA, for Plaintiff.

Linda Miller Savitt, Ballard, Rosenberg, Golper & Savitt, LLP, Universal City, CA, Wendy A. Moss, Linda Miller, Rushfeldt, Shelley & Drake, Sherman Oaks, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

SPERO, United States Magistrate Judge.

## I. *INTRODUCTION*

Defendants filed a Motion For Summary Judgment Or, In The Alternative, Motion For Partial Summary Judgment ("the Motion") on October 27, 2000. For the reasons stated below, Defendants' Motion is DENIED.

## II. *BACKGROUND*

Plaintiff Del Erdmann, a Caucasian male homosexual, alleges that his employer, Tranquility Inc. (d.b.a. San Miguel Villa), and Velda Pierce (who owns and operates San Miguel Villa) discriminated against him based upon religion and sexual orientation. Specifically, he alleges that Velda Pierce, who is a member of the Church of Jesus Christ of Latter–Day Saints ("Mormon Church"), discriminated against Plaintiff and created a hostile and abusive work environment based on religion—namely, her belief that homosexuality is immoral. He further alleges that Pierce's conduct gave rise to his constructive discharge.

### A. *Facts* [1]

#### 1. Erdmann's Employment History With San Miguel Villa

In August 1997, Plaintiff Del Erdmann interviewed for a job with San Miguel Villa. Plaintiff's Statement Of Disputed Issues in Support Of Opposition at 1. The interview was conducted by Velda Pierce, whose son was also present at the interview. Deposition of Del K. Erdmann ("Erdmann Depo.") at 28, Exh. 1 to Declaration of Wendy A. Moss in Support of Defendant's Motion For Summary Judgment ("Moss Decl.").[2] In the interview, Pierce asked Plaintiff, whose previous job was in New York, why he had returned to

---

1. In summarizing the facts, the Court has relied upon undisputed facts whenever possible. Where the facts are in dispute, the Court has drawn all inferences in favor of Plaintiff. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1373 (9th Cir.1987) (holding that on summary judgment court must view the evidence and the inferences from that evidence in the light most favorable to the nonmoving party).

2. Both Plaintiff and Defendants rely upon Plaintiff's deposition in the earlier filed state court action, which was dismissed without prejudice. The Court relies on this deposition

testimony as well, without reaching Defendants' request for judicial notice. Pursuant to Fed.R.Civ.P. 56(c), the court may rely upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in considering a motion for summary judgment. Deposition testimony from a state court action is at least as reliable as a sworn affidavit and therefore, to the extent that the content of the deposition testimony is otherwise admissible, that testimony is admissible on summary judgment. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir.1991).

the San Francisco Bay area. *Id.* at 22, 28–29. Plaintiff explained that his "significant other" had relocated to the Bay Area and so he had decided to relocate as well. *Id.* at 29. It is undisputed that Pierce was of the opinion at the time of the interview that Plaintiff was a homosexual. *See* Plaintiff's Statement of Disputed Issues In Support Of Opposition To Defendant's Motion For Summary Judgment at ¶ 4.[3] At the end of the interview, Pierce offered Plaintiff the position of MDS coordinator, and Plaintiff accepted the offer. Erdmann Depo. at 31–32, Exh. 1 to Moss Decl.

Until November 1998, Plaintiff was "very happy" in his employment with San Miguel Villa. *Id.* at 84. In June 1998, Erdmann was promoted to the position of Assistant Director of Nursing and received a salary increase. *Id.* at 63. This promotion was recommended by Robert Pritchard, the director of nursing at that time, and approved by Velda Pierce. *Id* at 69; *see also* Pierce Depo. at 52, Exh. 2 to Declaration of Henry Y. Ku In Support Of Opposition To Defendant's Motion For Summary Judgment/Summary Adjudication ("Ku Decl."); Deposition of Robert Allen Pritchard ("Pritchard Depo.") at 11, Exh. 3 to Ku Decl. In his new position, Plaintiff worked as Mr. Pritchard's assistant. Erdmann Depo. at 69, Exh. 1 to Moss Decl.

As an employee at San Miguel Villa, Plaintiff did not try to keep his sexual orientation a secret. Erdmann Depo. at 59, Exh. 1 to Ku Decl. On the other hand, aside from a few co-workers with whom he occasionally socialized outside of work, Plaintiff did not tell his co-workers that he was gay. *Id.* at 60–61. Nor did he tell Velda Pierce or his immediate supervisor, Robert Pritchard, that he was gay, although both were aware that he was gay. *Id.* at 58–60; Pierce Depo. at 69–70, Pritchard Depo. at 30, Exh. 3 to Ku Decl.

### 2. Joseph Alagon

Sometime before November 11, 1998, Joseph Alagon, a registered nurse "with more supervisorial duties than other nurses" employed by San Miguel Villa, told Robert Pritchard that he was uncomfortable with Plaintiff's conduct. Pritchard Depo. at 33–34, Exh. 3 to Ku Decl. Alagon told Pritchard that while Pritchard was absent from work due to a serious illness, Plaintiff had asked Alagon to come in to his office to discuss how Plaintiff and Alagon could work together to cover for Pritchard in his absence. *Id.* at 33. Alagon was particularly uncomfortable with the fact that Plaintiff had closed the door to his office at the beginning of this meeting. *Id.* at 34. Alagon also told Pritchard that Plaintiff had approached him more than once to ask him if he needed help. *Id.* at 33. The first time Plaintiff asked, Alagon declined Plaintiff's offer. *Id.* The second time Plaintiff offered assistance, Alagon said something like "I don't want your help, I told you before" and "please

---

**3.** There is conflicting evidence in the record on the issue of whether Pierce was aware that Plaintiff was a homosexual when she hired him. In particular, Plaintiff testified in his deposition that Pierce referred to Plaintiff's "significant other" as "her" during the interview and that Plaintiff did not correct Pierce's apparent assumption that his "significant other" was a woman. Erdmann Depo. at 29, Exh. 1 to Moss Decl. On the other hand, Pierce testified in her deposition that she understood at the interview that Plaintiff was a homosexual because he referred to his significant other as "him." Deposition of Velda Pierce ("Pierce Depo.") at 69, Exh. 2 to Moss Decl.; *see also* Declaration of Velda Pierce in Support of Defendant's Motion For Summary Judgment Or, In The Alternative, Partial Summary Judgment at ¶ 2. While this may be an issue for trial, the Court assumes for the purposes of this motion that Pierce was aware that Plaintiff was a homosexual when she hired him, as the parties have agreed.

leave me alone." *Id.* When Pritchard asked Alagon whether he felt that he had been "harassed," Alagon said that he did not, but that he felt uncomfortable with Plaintiff's conduct. *Id.* at 35. Alagon and Pritchard did not discuss Alagon's feelings about homosexuals during this conversation. *Id.* at 37. Apparently, Alagon stopped coming to work after this meeting. *See* Pierce Depo. at 92, Exh. 2 to Ku Decl.

Following the discussion between Pritchard and Alagon, Pritchard informed Velda Pierce of his conversation with Alagon. *Id.* at 36. He and Pierce agreed that Alagon's reluctance to work with Plaintiff was not good for teamwork and that they should try to resolve the problem by having a meeting with both Plaintiff and Alagon present. *Id.* at 37. Sometime thereafter, Pierce had a telephone conversation with Alagon in which she asked him to come in to discuss his continued employment with San Miguel Villa. Pierce Depo. at 87, Exh. 2 to Ku Decl. On November 12, a meeting was held in which Plaintiff, Alagon, Pierce and Pritchard participated (see below).

### 3. November 11 Meeting

In the meantime, on November 11, Plaintiff asked to talk to Velda Pierce. Erdmann Depo. at 75, Exh. 1 to Ku Decl. According to Plaintiff, he had been told by a co-worker that another co-worker had said that Plaintiff had said Pierce only hired "drunks and drug addicts as nurses." *Id.* at 76. Plaintiff went to Pierce's office to tell her about the statement and let Pierce know that Plaintiff had not made such a statement. *Id.* at 77. During the course of the conversation, Pierce told Plaintiff that "some people are troublemakers and they may be friends to your face but they're going to stab you in the back." *Id.* at 78. Plaintiff responded by mentioning the incident that had occurred with Joseph Alagon, when Alagon told Plaintiff to leave him alone. *Id.* He told

Pierce, "Well, it's kind of the way Joseph Alagon was then. He was real nice to me and then all of a sudden I asked him if he needed help and he screamed back at me." Erdmann Depo. at 78, Exh. 1 to Ku Decl. At that point, Pierce began to discuss Plaintiff's homosexuality. *Id.; see also* Pierce Depo. at 76, Exh. 2 to Ku Decl. (describing meeting with Plaintiff in which Pierce told Plaintiff that she believed homosexuality was immoral and that when Plaintiff died, "he would go before the Lord and the Lord would question his homosexual ways."). According to Plaintiff, Pierce told Plaintiff that it is "immoral" to be a homosexual, and that he should become heterosexual and a Mormon or he would go to hell. *Id.* According to Pierce, Plaintiff was "tearful" during this meeting and told her he did not want to discuss the subject, then walked out of her office. Pierce Depo. at 77, Exh. 2 to Ku Decl. On the same day, Plaintiff told his supervisor, Robert Pritchard, about the meeting. Erdmann Depo. at 80, Exh. 1 to Ku Decl.

### 4. November 12 Meeting

On November 12, Velda Pierce called Pritchard and instructed him to bring Plaintiff to her office for a meeting with Joseph Alagon. Pierce Depo. at 88, Exh. 2 to Ku Decl. Alagon was already in Pierce's office when Plaintiff and Pritchard arrived. *Id.* Pierce then began to talk to Alagon and Plaintiff. *Id.* Plaintiff describes the meeting as follows:

> She said ... "I'll start this meeting. Joseph is coming back to work here. And one of the reasons the problems had arisen was that Joseph listened to gossip and after finding out that—at first he really thought you were a wonderful guy, very helpful and nice, but then after he found out you were homosexual then that changed everything because how we view homosexuals as immoral, indecent and they just want to be

promiscuous and go to bed with everybody. And you had never told him you were involved in a monogamous relationship of three years," which then I corrected her, of seven, "and that you just better stay in that monogamous relationship or else something bad is going to happen to you." "And then she directed me to go out and tell all the employees of San Miguel Villa—that I need to go tell everybody that I'm a homosexual and I'm involved in a monogamous relationship and that I don't want to go to bed with everybody where I work, because if I—I need to tell everybody those kinds of things."

Erdmann Depo. at 98–99, Exh. 1 to Ku Decl. Pierce then instructed Plaintiff and Alagon to shake hands. *Id.* at 101. Plaintiff complied because "Mrs. Pierce is the boss, the owner" and he was "scared of losing [his] job." *Id.* at 102. It was evident to Pierce, however, that Plaintiff was "very angry." Pierce Depo. at 96, Exh. 2 to Ku Decl. The two shook hands, but Alagon never came back. Pierce Depo. at 96, Exh. 2 to Ku Decl.

Plaintiff resigned the following day, on November 13. Erdmann Depo. at 121, Exh. 1 to Ku Decl. 121. He did not tell Pierce the reasons for his resignation. *Id.* at 123. However, he stated in his deposition that it was clear to him that she knew "exactly why [he] was quitting," namely, that he was "being persecuted for being a homosexual and [he] was told [he] was going to hell if [he] didn't think [he] was a Mormon." *Id.* at 121–122.

### 5. Tony Herebia

Sometime during the week following the November 12 meeting, Velda Pierce had a conversation with another homosexual employee, Tony Herebia, about his sexual orientation. Erdmann Depo. at 107–108, Exh. 1 to Moss Decl. According to Herebia, Pierce told him that some employees were uncomfortable with the fact that he

was gay and that he should "not let anybody know" that he was homosexual. Deposition of Tony Herebia ("Herebia Depo.") at 8–9, Exh. 5 to Moss Decl. Herebia responded by telling Pierce, "that's too bad. I have right to be out at work … and I'm not going to be pushed in the closet by my employer." *Id.* According to Herebia, Pierce conceded that he had "the right to be out at work," and they never discussed the issue again. *Id.* Herebia told Plaintiff about this conversation with Pierce while Plaintiff was still working at San Miguel Villa. Erdmann Depo. at 108, Exh. 1 to Moss Decl. According to Plaintiff, Herebia told Plaintiff that Velda Pierce had told Herebia to "keep [his homosexuality] in the closet while he [was] at work." *Id.* Herebia also told Plaintiff that he had told Pierce that he was gay and that he had said to her, "I act the way I want." *Id.* Herebia did not discuss with Plaintiff how Pierce responded to this statement. *Id.*

### 6. November 16 Meeting

On November 16, Pierce called Plaintiff into her office, along with Robert Pritchard, and told Plaintiff that she was "concerned with [his] everlasting life." Erdmann Depo. at 120, Exh. 1 to Moss Decl. She said, "I love you and … want to meet you in heaven some day. However, if you don't become a Mormon and don't change to a heterosexual male you can forget about going to heaven." *Id.*

### 7. Daily Prayers

While Plaintiff was employed at San Miguel Villa, a daily prayer was given following the morning communications meeting. Erdmann Depo. at 43, Exh. 1 to Ku Decl. Defendants submitted declarations by two employees of San Miguel Villa stating that they were told that participation in the prayer was voluntary. *See* Declaration of

Edith Boss in Support of Motion For Summary Judgment Or, In The Alternative, Motion For Partial Judgment ("Boss Decl.") at ¶ 5; Declaration of Yvonne Senn In Support of Motion For Summary Judgment Or, In The Alternative, Motion For Partial Judgment ("Senn Decl.") at ¶ 5. In addition, Velda Pierce testified in her deposition that when a new person came into the meeting, it was her custom to inform them that participation in the prayer at the end of the meeting was voluntary. Pierce Depo. at 61, Exh. 2 to Ku Decl.; *see also* Pritchard Depo. at 25, Exh. 4 to Moss Decl. However, Plaintiff could not recall being told that participation was voluntary. *Id.* Nor did Pierce have a specific memory of informing Plaintiff that participation was voluntary. Pierce Depo. at 61, Exh. 2 to Ku Decl. Plaintiff stayed in the room during the prayer, but was offended by it. Erdmann Depo. at 43, Exh. 1 to Ku Decl. More than once, Pierce asked Plaintiff to give the prayer. Erdmann Depo., at 46, Exh. 1 to Moss Decl. When Plaintiff declined, Pierce did not say anything but "appeared offended." *Id.* at 47.

### B. *Claims*

On the basis of the facts alleged above, Erdmann brings the following claims in his First Amended Complaint:

*Claim 1:* Religious discrimination in violation of Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.* (against Tranquility Inc.);

*Claim 2:* Religious discrimination in violation of the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12900 *et seq.* (against Tranquility Inc.);

*Claim 3:* Religious harassment in violation of Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.* (against Tranquility Inc.);

*Claim 4:* Religious harassment in violation of California FEHA, Cal. Gov't Code §§ 12900 *et seq.* (against Tranquility Inc. and Pierce);

*Claim 5:* Sexual orientation harassment in violation of California FEHA, Cal Gov't Code § 12900 *et seq.* (against Tranquility Inc. and Pierce);

*Claim 6:* Discharge in violation of public policy (against Tranquility Inc.);

*Claim 7:* Sexual orientation discrimination in violation of California FEHA, Cal Gov't Code § 12900 *et seq.* (against Tranquility Inc.).

In this motion, Defendants seek summary judgment in their favor on the following grounds: Plaintiff has failed to present evidence showing that he was subjected to a hostile and abusive work environment with respect to his harassment claims under Title VII and FEHA; 2) Plaintiff has failed to establish that Defendants took any adverse employment action—including constructive discharge—against him, which is a prima facie element of Plaintiff's discrimination claims under both Title VII and FEHA, as well as of his constructive discharge claim (Claims 1, 2, 6 and 7). Plaintiff asserts in his opposition that: 1) he has presented sufficient evidence of harassment to establish a genuine issue of material fact as to whether he was subjected to a hostile work environment; 2) he has presented sufficient evidence to establish a genuine issue of material fact with respect to whether he was constructively discharged; and 3) even if he was not constructively discharged, acts creating a hostile work environment constitute adverse employment action for the purposes of Plaintiff's discrimination claims.

## III. ANALYSIS

### A. Legal Standard

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the non-moving party will bear the burden persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.,* 210 F.3d 1099 (9th Cir.2000). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. On summary judgment, all reasonable inferences must be drawn in favor of the non-moving party. *Id.*

### B. Hostile Work Environment

Plaintiff asserts hostile work environment claims based upon Title VII and FEHA (Claims 3, 4 and 5). Title VII provides that "it shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a). The FEHA provides that "[i]t shall be an unlawful employment practice ... [f]or an employer, because of ... religious creed ... or sexual orientation of any person ... to bar or to discharge the person

from employment ... or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov.Code § 12940. It is well-established that a violation of these provisions occurs where discrimination gives rise to a hostile or abusive work environment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(Title VII); *Fisher v. San Pedro Peninsula Hospital,* 214 Cal. App.3d 590, 608, 262 Cal.Rptr. 842 (1989) (FEHA).

In order to prevail on a hostile work environment claim under Title VII and FEHA, Plaintiff must establish that the workplace was permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotations omitted) (articulating standard for Title VII harassment claim); *Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842 (1989) (adopting same standard for harassment claims under FEHA). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In determining whether a work environment is hostile or abusive, the court must consider all of the circumstances. *Harris,* 510 U.S. at 23, 114 S.Ct. 367. This may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id.* The Court in *Harris* explained further that "[t]he effect on the employee's psychological well-being is, of course, relevant to whether the employee actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." *Id.*

■ Defendants contend that no reasonable jury could conclude that Plaintiff was subjected to a hostile work environment based upon the evidence presented by Plaintiff because Defendants' conduct was neither "pervasive" nor "severe." Motion at 14.[4] As to the pervasiveness of Defendants' conduct, Defendants assert that the alleged harassment was based upon three incidents which occurred over a five-day period—the meetings on November 11, November 12 and November 16—one of which occurred after Plaintiff had already resigned. In support of their argument that Defendants' conduct was not "severe," Defendants make the following points: 1)

there is no evidence to show that Pierce's religious beliefs regarding homosexuality affected her personnel decisions; 2) Plaintiff cannot show that other homosexual employees were pressured by Pierce to become Mormon or heterosexual males; 3) Plaintiff's own conduct—namely, his failure to tell Pierce that he had a right to be openly gay at work, as Tony Herebia had done—belied the fact that he found his work environment to be abusive; 4) Plaintiff continued to work for two weeks after submitting his resignation, showing that the work environment was not intolerable; 5) Plaintiff admitted that he suffered no psychological injury. Motion at 14–15.

Plaintiff, on the other hand, argues that he was subjected to harassment that was both "pervasive" and "severe." First, Plaintiff argues that Defendants' conduct was pervasive because it was not limited to a five-day period, as Defendants' assert, but rather, extended over a much longer period of time, pointing to the daily pray-

4. A court may grant summary judgment on a Title VII and FEHA harassment claims on the basis that no reasonable jury could find the defendant's conduct severe of pervasive. *See., e.g., Kortan v. California Youth Authority,* 217 F.3d 1104 (9th Cir.2000) (affirming summary judgment in favor of employer on this basis). However, Defendants have not cited to any cases in which a court has granted summary judgment on this basis, much less any cases that are factually similar to the one here where summary judgment was granted or affirmed. Rather, Defendants have cited to cases in which summary judgment in favor of the employer was denied or reversed and seek to distinguish the facts of this case from those cases. *See, e.g., Ellison v. Brady,* 924 F.2d 872 (9th Cir.1991) (reversing summary judgment in favor of employer on harassment claim); *Venters v. City of Delphi,* 123 F.3d 956 (7th Cir.1997) (reversing summary judgment in favor of employer on harassment claim); *Peck v. Sony Music Corp.,* 1995 WL 505653 (S.D.N.Y.1995) (denying summary judgment in favor of employer on harassment claim). The remaining cases cited by Defendants in support of their argument that Plaintiff has

failed to create a material issue of fact with respect to his harassment claims do not involve summary judgment and thus are of limited value in determining the types of factual situations in which it may be appropriate to grant summary judgment in favor of an employer on harassment claims. *See, e.g., Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (reinstating jury verdict in favor of plaintiff on sexual harassment claim against employer on basis that employer can be vicariously liable for harassment of employee by supervisor and employer did not exercise reasonable care to prevent harassing behavior); *Etter v. Veriflo Corp.,* 67 Cal.App.4th 457, 79 Cal.Rptr.2d 33 (1998) (upholding jury verdict in favor of defendant on harassment claim and rejecting argument that jury instruction misstated the law governing harassment in stating that "occasional, isolated, sporadic or trivial" acts of harassment were not actionable); *Weller v. Citation Oil and Gas Corp.,* 84 F.3d 191 (5th Cir.1996) (reversing jury verdict in favor of plaintiff on basis that harassment claim was supported by insufficient evidence).

ers that were conducted at the end of the communications meeting during the entire period Plaintiff was employed by San Miguel Villa. Opposition at 12. According to Plaintiff, he was pressured to stay for the daily prayer, and Velda Pierce was offended when he declined to lead the prayer. Second, Plaintiff argues that Defendants' conduct was sufficiently outrageous to create a hostile work environment. He relies upon the following conduct in support of this argument: 1) Pierce told Plaintiff that homosexuality was immoral and that he would go to hell if he did not give up his homosexuality and become a Mormon; 2) Pierce told Plaintiff that other employees were uncomfortable with Plaintiff's homosexuality because homosexuals are promiscuous and just want to have sex, and therefore, that Plaintiff should tell the other employees of San Miguel Villa that he was currently engaged in a monogamous relationship and did not want to have a relationship with any employees of San Miguel Villa.

Based on the record before the Court, there exists a genuine issue of fact as to whether a hostile work environment existed. While Defendant has cited a number of facts that will, no doubt, be offered at trial, the Court cannot conclude at this stage of the proceedings that no reasonable jury could find that Defendants' conduct was sufficiently severe or pervasive to give rise to hostile work environment. The Court denies Defendants' motion with respect to Plaintiff's harassment claims.

While a hostile work environment claim may be stronger where it is based upon repeated incidents, the pervasiveness of the conduct that must be shown to prevail on a hostile work environment claim varies inversely with the seriousness of the incidents. *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir.1991). For example, in *Vance v. Southern Bell Telephone & Telegraph Co.,* the court held that two incidents in which a noose was hung over an employee's work station were sufficient to create a jury question on the existence of a racially hostile work environment. 863 F.2d 1503, 1510 (11th Cir.1989). Further, "in evaluating the severity and pervasiveness of sexual harassment, we should focus on the perspective of the victim." *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir.1991). "[T]he reasonable victim standard ... classifies conduct as unlawful sexual monogamous relationship or else something bad is going to happen to you." Erdmann Depo. at 98, Exh. 1 to Ku Decl. There is also evidence that Pierce required Plaintiff to tell other employees at San Miguel Villa that he was homosexual but that he "did not want to go to bed with everybody" because he was in a monogamous relationship. *Id.* at 99. Again, Plaintiff spoke to Robert Pritchard after the meeting, and Pritchard testified that Plaintiff was "upset." Pritchard Depo. at 43, Exh. 3 to Ku Decl. Pierce testified that during the meeting Plaintiff's "body language" and demeanor indicated to her that Plaintiff was "very angry." Pierce Depo. at 96, Exh. 2 to Ku Decl. Plaintiff testified that he was "very upset" about the meeting.

Defendants rely upon the Seventh Circuit's decision in *Venters v. City of Delphi,* 123 F.3d 956 (7th Cir.1997). In *Venters,* the court of appeals reversed the district court's grant of summary judgment in defendant's favor on the plaintiff's Title VII hostile work environment claim based upon religion. There, the plaintiff's employer had repeatedly lectured her about her "sinful life" and her prospects for salvation, and made highly personal inquiries about her private life. *Id.* at 976. The plaintiff's employer told her at one point that he was sure that she was having sex with family members, and possibly animals, and that the plaintiff should consider committing suicide rather than continue to lead the sinful life she was leading. *Id.* Many of her employers' comments were

accompanied by a reminder that plaintiff was an at-will employee who could be terminated at any time. *Id.* at 963. Even after the plaintiff told her employer that he had "crossed the line," her employer's proselytizing continued for another eight months, until the plaintiff was finally discharged. *Id.* The court of appeals concluded that a reasonable jury could find that the plaintiff's employer "made adherence to his set of religious values a requirement of continued employment" and on that basis reversed the district court's grant of summary judgment in favor of the defendant on the plaintiff's Title VII harassment claim based on religion. *Id.* at 976. The court of appeals noted that the plaintiff's harassment claim "fit neatly within the *quid pro quo* framework."

While the facts in *Venters* differ in some respects from those at issue here, the Court does not find the conduct in *Venters* to be so different from the conduct at issue here as to support the conclusion that Defendants are entitled to summary judgment on Plaintiff's harassment claims. First, the Court rejects the suggestion that *Venters* requires that an employer must threaten to terminate an employee or withdraw job benefits in order for an employee to prevail on a harassment claim. While *Venters* did involve such threats, it is well-established that such *quid pro quo* harassment is just one type of harassment and that harassment that does not involve any threats to job benefits may also give rise to a hostile work environment. *See Harris,* 510 U.S. at 20, 114 S.Ct. 367 (noting that there was no issue of *quid pro quo* harassment in that case); *Brooks v. City of San Mateo,* 229 F.3d 917, 923 (9th Cir. 2000) (explaining that harassment claims fall into two major categories: 1) hostile work environment harassment; and 2) *quid pro quo* harassment). Therefore,

even if it were true, as Defendants assert, that there is no evidence that Pierce's awareness of Plaintiff's homosexuality ever affected her personnel decisions, this would not entitle Defendants to summary judgment on Plaintiff's harassment claims.

The Court also rejects Defendants' argument that Plaintiff was not subject to a hostile work environment because he cannot show that other homosexual employees were pressured by Pierce to become Mormon or heterosexual males. Motion at 14. Defendants have cited no authority in support of their argument that Pierce's treatment of other homosexuals is relevant to whether her conduct subjected *Plaintiff* to a hostile work environment. Indeed, in *Venters,* there is no suggestion that the employer in that case pressured any employee other than the plaintiff to adopt his religious views. In any event, the record does not support Defendants' contention that Pierce never pressured other homosexual employees. To the contrary, there is evidence in the record that soon after the November 12 meeting, while Plaintiff was still employed by San Miguel Villa, Pierce approached another homosexual employee, Tony Herebia, and told him that he should keep his homosexuality a secret. Herebia Depo. at 8, Exh. 5 to Ku Decl. Herebia testified that Pierce raised the issue in the context of a job interview and that he told her that "we are supposed to be evaluating my work status." *Id.* He then told Pierce that he had a right to be gay at work and Pierce did not raise the issue again. *Id.* Regardless of whether Pierce subjected Herebia to *further* pressure after this incident, a jury could reasonably infer based on Pierce's conversation with Herebia that she did attempt to pressure another homosexual regarding his sexual preference because of her Mormon beliefs.[5]

---

5. Defendants argue that Plaintiff's failure to tell Pierce "how he felt and how he wanted to

proceed," as Herebia had done, shows that he could not have been subjected to a hostile

Nor is the Court convinced that Plaintiff's ability to work the last two weeks following his resignation indicates that his work environment could not have been hostile or abusive as a matter of law. Defendants have cited no authority for the proposition that an employee's work environment must be so intolerable that they cannot give two week's notice in order to prevail on a harassment claim.

Finally, the Court rejects Defendants' assertion that they are entitled to summary judgment because Plaintiff did not suffer psychological injury serious enough to require medical or psychiatric treatment. It is well-established that Title VII is not limited to conduct that seriously affects a person's psychological well-being, but rather, proscribes workplace conduct giving rise to "an environment [that] would reasonably be perceived, and is perceived, as hostile or abusive." *Harris*, 510 U.S. at 22, 114 S.Ct. 367. Plaintiff has presented sufficient evidence to create a material issue of fact on this issue.

### C. *Constructive Discharge*

█ Plaintiff also claims that he was constructively discharged in violation of public policy (Claim 6). Under California law, a plaintiff "who was constructively discharged because of harassment based on actual or perceived sexual orientation may bring such a claim." *Kovatch v. California Casualty Management Company*, 65 Cal.App.4th 1256, 1269–1270, 77 Cal.

Rptr.2d 217 (1998). Defendants assert that this claim cannot survive summary judgment because Plaintiff has not presented sufficient evidence to create a material issue of fact on the question of whether Plaintiff was constructively discharged. The Court disagrees.

█ Under California law, constructive discharge occurs where "the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner v. Anheuser–Busch Inc.*, 7 Cal.4th 1238, 1251, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994). For example, in *Kovatch v. California Casualty Management Company*, the plaintiff was a homosexual male who was subjected to a series of anti-gay comments by his supervisor. 65 Cal.App.4th 1256, 1269–1270, 77 Cal.Rptr.2d 217 (1998). One of these comments included the statement: "you're a faggot and there's no place for faggots in this company. And when [the district manager] and I meet with you tomorrow, you're fired." *Id.* at 1263, 77 Cal.Rptr.2d 217. The plaintiff never returned to work but instead, went on temporary disability. *Id.* As the end of his disability drew near, he informed his employer that he had been discriminated against on the basis of sexual orientation

---

work environment. Motion at 15. Indeed, Plaintiff testified in his deposition that he became aware while still employed by San Miguel Villa that Herebia had told Pierce that he had a right to be openly gay at work. Erdmann Depo. at 108, Exh. 1 to Moss Decl. On the other hand, while Herebia testified in his deposition that Pierce conceded that he had a right to be openly gay at work, there is no evidence in the record that Plaintiff had any knowledge of this aspect of Herebia's conversation with Pierce. Herebia Depo. at 8, Exh. 5 to Ku Decl. Rather, Plaintiff testified

that Herebia did not tell him how Pierce had responded when he told her he would not "go back in the closet." Erdmann Depo. at 108, Exh. 1 to Moss Decl. Whether or not Plaintiff's reaction to Pierce's conduct was reasonable in light of his awareness of Herebia's conversation with Pierce may be an issue at trial. At this stage in the proceeding, however, the Court cannot say that Plaintiff's failure to assert his rights in the manner that Herebia did shows that Plaintiff was not, as a matter of law, subjected to a hostile work environment.

and sought to return to work in a different office, working under a different supervisor. *Id.* His employer offered him a different position, with a lower salary, in another office, but told plaintiff that it was unable to offer him a position on the same level as his previous position. *Id.* After the plaintiff declined to take the position his employer offered him as an alternative to his former position, his employer filled the plaintiff's former position on the basis that the plaintiff had exceeded the company's maximum leave policy. *Id.* at 1265, 77 Cal.Rptr.2d 217. The district court in *Kovatch* granted summary judgment in favor of the plaintiff's employer on his constructive discharge claim, reasoning that the plaintiff failed to return to work after going on disability leave. *Id.* at 1266, 77 Cal.Rptr.2d 217. The court of appeal reversed, finding that a reasonable jury could have found that the plaintiff's employer constructively discharged him by forcing him to choose between working in intolerable conditions or accepting a demotion. *Id.* at 1267, 77 Cal.Rptr.2d 217.

Here, as in *Kovatch,* there is sufficient evidence to create a material issue of fact on the question of whether Plaintiff's employer intentionally created work conditions that were so intolerable that a reasonable person would have felt compelled to quit. As discussed above, Plaintiff's employer, Velda Pierce, told him he would go to hell if he didn't become heterosexual and a Mormon, and expressed her view, in front of other employees, that homosexuals are promiscuous. There is also evidence that Pierce required Plaintiff to discuss his private life with at least one other employee in order to reassure that employee that Plaintiff did not want to "go to bed" with him and told Plaintiff he should tell other employees at San Miguel Villa the same thing. Following Plaintiff's resignation, Pierce called Plaintiff into her office again to tell him about her concerns for his salvation. While this evidence may or may not persuade a jury that the conditions of Plaintiff's employment were intolerable, it certainly creates a genuine issue of fact.

The Court rejects Defendants' assertion that Pierce's conduct was "enormously different" from the conduct in *Kovatch* because it was motivated by love rather than animosity. The standard for determining whether constructive discharge has occurred is whether a *reasonable* person would find the conditions intolerable and not whether the employer believed her conduct to be offensive. Moreover, to the extent that California law requires that the employer have "actual (rather than mere constructive) knowledge of the intolerable conditions," see *Turner,* 7 Cal.4th at 1249, 32 Cal.Rptr.2d 223, 876 P.2d 1022, this requirement is satisfied here, where the alleged "intolerable conditions" were created by Velda Pierce, the owner of San Miguel Villa, and where there is evidence that Pierce understood that her conduct was unwelcome to Plaintiff. *See* Pierce Depo. at 77, Exh. 2 to Ku Decl. (stating that Plaintiff was "tearful" when Pierce raised the issue of his homosexuality and his eternal salvation, that he told Pierce he didn't want to talk about it and got up and left); *Id.* at 96 (stating that during the November 12 meeting with Alagon, Plaintiff's "body language" and demeanor indicated to her that Plaintiff was "very angry"). The Court cannot say at this stage of the proceeding, where it is required to draw all reasonable inferences in Plaintiff's favor, that no reasonable jury could conclude that Plaintiff was constructively discharged.

The Court also rejects Defendants' assertion that they are entitled to summary judgment on Plaintiff's constructive discharge claim because Plaintiff "made no effort to address his concerns with Pierce before departing on November 27." Motion at 18. First, as noted above, Plaintiff

has presented evidence from which a reasonable jury could conclude that he did, in fact, tell both Pierce and Pritchard that Pierce's comments concerning his sexual orientation were inappropriate and unwelcome and that Pierce did not change her conduct in response. Second, as the court explained in *Clowes v. Allegheny Valley Hospital*, although employees will usually explore alternative avenues before resigning, courts "do not require that such steps be taken in all cases. An employee may be able to show working conditions were so intolerable that a reasonable employee would feel forced to resign without remaining on the job for the period necessary to take those steps." 991 F.2d 1159, 1162 (3d Cir.1993). In *Clowes*, the court reversed a jury verdict in favor of the plaintiff on a constructive discharge claim because it found insufficient evidence to support a finding of constructive discharge. In reaching this conclusion, the court noted that the plaintiff had not explored other alternatives before resigning, pointing out that because the alleged harassment involved only one supervisor, the plaintiff could have requested to work under another supervisor. *Id.* at 1162. In contrast, the alleged conduct in this case was by the owner and executive administrator of San Miguel Villa. As a result, it is less clear that there were any alternatives available for Plaintiff to explore. While this is an appropriate issue for trial, it does not provide a sufficient basis for dismissing Plaintiff's constructive discharge claim at this stage of the proceeding.

### D. Discrimination Claims under FEHA and Title VII

■ Plaintiff alleges in Claims 1, 2 and 7 that he was discriminated against in violation of Title VII (based on religion) and FEHA (based on religion and sexual orientation). In order to prevail on a discrimination claim under Title VII or FEHA, a Plaintiff must establish as one of the prima facie elements of his case that he was subjected to some adverse employment action. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1038 (10th Cir.1993); *Kovatch v. California Casualty Management Company*, 65 Cal. App.4th 1256, 77 Cal.Rptr.2d 217 (1998). Defendants assert that they are entitled to summary judgment on these claims, like Plaintiff's claim for discharge in violation of public policy, because Plaintiff has failed to establish a genuine issue of material fact with respect to whether Plaintiff was constructively discharged. Plaintiff asserts that: 1) he has presented sufficient evidence to create a genuine issue of material fact as to constructive discharge; and 2) harassment can, itself, be an adverse employment action for the purpose of a discrimination claim and, therefore, Plaintiff need not establish that he was constructively discharged so long as he can raise an inference that he was discriminated against. Because the Court finds a triable issue of fact with respect to constructive discharge, it does not reach Plaintiff's second argument.

■ As discussed above, Plaintiff has presented evidence from which a reasonable jury could conclude that he was constructively discharged under California law. Therefore, Defendants are not entitled to summary judgment on Plaintiff's discrimination claims under FEHA.

■ Similarly, Plaintiff has presented sufficient evidence of constructive discharge under federal law to satisfy the adverse employment action requirement under Title VII, for the purposes of summary judgment. In order to determine whether constructive discharge has occurred under Title VII, courts in the Ninth Circuit consider, based upon the totality of the circumstances, whether " 'a reasonable person in the employee's position would have felt that he was forced to quit be-

cause of intolerable and discriminatory working conditions.' " *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (quoting *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984)). As the Court explained in *Watson,* "[t]his test establishes an objective standard; the plaintiff need not show that the employer subjectively intended to force the employee to resign." *Id.*

This standard was applied in *Young v. Southwestern Savings and Loan Ass'n,* 509 F.2d 140 (5th Cir.1975). There, the plaintiff was an excellent employee who was well-liked by her supervisors. *Id.* at 141. When she was hired, she knew that employees were required to attend a monthly business meeting which included a religious° talk and prayer. *Id.* Although she attended the first meeting without protest, she subsequently decided not to attend any further meetings, which she felt violated her freedom of conscience. *Id.* For several months, her absence was not noticed. *Id.* However, her absence was eventually reported to the branch manager where she worked, who then questioned her about it. *Id.* When the plaintiff told the branch manager she would not attend the meetings because of the religious portion of the meeting, the manager advised her that she could simply "close her ears." *Id.* at 142. The plaintiff told the branch manager that this was unacceptable and he told her that the meetings were mandatory and that he would leave the choice to her. *Id.* On that same day, plaintiff returned her keys and told the branch manager she was leaving permanently because she could not attend the meetings. *Id.* When the branch manager asked for a letter of resignation, the plaintiff refused saying "I am being fired." *Id.* The branch manager assured her that she was not being fired, but plaintiff left without further discussion. *Id.* The plaintiff subsequently sued her employer for religious discrimination in violation of Title VII, based on a theory of constructive discharge.

The district court entered judgment in favor of the employer on the basis that the plaintiff had voluntarily resigned. However, the Fifth Circuit reversed, finding that the plaintiff had presented sufficient evidence to establish that she was constructively discharged. The court held that the plaintiff could have reasonably inferred that she would eventually be discharge for failing to attend the company meetings and that she was not required to wait to be fired before terminating her association with her employer. *Id.* at 144. *See also Nolan v. Cleland,* 686 F.2d 806, 812–813 (9th Cir.1982) (citing to *Young* with approval). Here, as in *Young,* there is evidence from which a reasonable jury could infer that Plaintiff was constructively discharged.

**E. *Punitive Damages***

■ Plaintiff seeks punitive damages on both his federal and state law claims. Under Title VII, as amended, a plaintiff may recover punitive damages where an employer has acted with "malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). As the Supreme Court explained in *Kolstad v. American Dental Association,* the reckless indifference standard requires that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). Thus, an employer may not be subject to punitive damages where, for instance, the employer was unaware of the relevant federal prohibition or the employer reasonably believed its discrimination satisfied a bone fide occupational qualification defense. Here, however, Defendants have presented no evidence that Pierce was not aware of federal law prohibiting discrimination on the basis of religion or that she reasonably believed

her actions were lawful. Indeed, as Defendants have pointed out, Pierce conceded in her conversation with Tony Herebia that he had a right to be openly gay at work. Therefore, the court rejects Defendants' assertion that Plaintiff may not, as a matter of law, seek punitive damages on his Title VII claim.[6]

■ Plaintiff also seeks punitive damages on his state law claims. The California Supreme Court has held that "in a civil action under the FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained." *Commodore Home Systems, Inc. v. Superior Court,* 32 Cal.3d 211, 221, 185 Cal.Rptr. 270, 649 P.2d 912 (1982). Therefore, punitive damages are available under Cal. Civ.Code § 3294, which provides for punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." "Malice" is defined in § 3294 as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ.Code § 3294(c)(1). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ.Code § 3294(c)(2). The Court cannot say at this stage of the proceeding, where it is required to draw all reasonable inferences in favor of the plaintiff, that no reasonable jury could conclude based upon the evidence presented by Plaintiff that Pierce's acts were despicable and taken in conscious disregard of Plaintiff's rights.

Therefore, the Court declines to hold that Plaintiff is barred from seeking punitive damages on his state law claims.

## IV. *CONCLUSION*

For the reasons stated above, Defendants' Motion for Summary Judgment, Or In The Alternative, Motion For Partial Summary Judgment, is DENIED.

IT IS SO ORDERED.

---

6. Defendants assert that punitive damages cannot be awarded here because Pierce's actions were well-intentioned and because she viewed Plaintiff as a friend and was concerned about his eternal salvation. However, Defendants have presented no authority in support of the proposition that punitive damages may not be awarded where an employer's discriminatory conduct was motivated by concern for the employee's salvation rather than animosity.